| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| *Caption in Compliance with D.N.J. LBR 9004-1(b)*<br>**FOX ROTHSCHILD LLP**<br>1301 Atlantic Avenue<br>Midtown Building, Suite 400<br>Atlantic City, NJ 08401-7212<br>Michael J. Viscount, Esq.<br>Martha B. Chovanes, Esq.<br>Joseph J. DiPasquale, Esq.<br>Michael R. Herz, Esq.<br>mviscount@foxrothschild.com<br>mchovanes@foxrothschild.com<br>jdipasquale@foxrothschild.com<br>mherz@foxrothschild.com<br>Telephone:  (609) 348-4515<br>Facsimile:  (609) 348-6834<br><br>*Counsel to the Official Committee of Unsecured Creditors* | |
| In re:<br><br>ALUMINUM SHAPES, L.L.C.,<br><br>                Debtor. | Chapter 11<br><br>Case No. 21-16520-JNP |
| ALUMINUM SHAPES, L.L.C.,<br><br>                Plaintiff,<br><br>   v.<br><br>EULER HERMES NORTH AMERICA INSURANCE CO., subrogee of NORTHEAST METAL TRADERS, INC.,<br><br>              Defendant. | ADVERSARY NO.<br><br><br><br>**COMPLAINT** |

The Official Committee of Unsecured Creditors (the "Committee" or "Plaintiff") for Aluminum Shapes, L.L.C. (the "Debtor"), by and through its counsel, Fox

127809680.2

Rothschild LLP, brings this adversary proceeding complaint against the Defendant and Creditor, Euler Hermes North America Insurance Co., subrogee of Northeast Metal Traders, Inc. ("Euler" or the "Defendant" or the "Creditor"), and states as follows:

## PRELIMINARY STATEMENT

1. This adversary proceeding is commenced by the Committee, pursuant to §§ 506 and 544 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (as amended, the "Bankruptcy Code"), and Rules 7001(2) and (8) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. This adversary proceeding arises from Euler's failure to properly levy upon a judgment it obtained in the Superior Court of New Jersey, Civil Part, Camden County.

3. Euler's failure to properly levy renders the Lien (defined below) created by that judgment avoidable pursuant to sections 502, 506, 544, and 547 of the Bankruptcy Code.

4. Accordingly, the Committee requests avoidance of the Lien, a determination that Euler's claim is unsecured, and related relief.

## I. PARTIES

5. The Debtor, Aluminum Shapes, L.L.C., is a limited liability company doing business in New Jersey, with an address at 9000 River Road, Delair, New Jersey 08110.

6. Upon information and belief, Euler is a Maryland corporation with an address at 800 Red Brook Boulevard, Owings Mills, Maryland 21117.

7. The Committee is a statutory committee of unsecured creditors, which was appointed by the Office of the United States Trustee for Region 3 on September 1, 2021 pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 77]. The members of the Committee are: (i) Indigo Global, LLP; (ii) PSE&G; (iii) Nathan H. Kelman, Inc., (iv) Energy Power

2

Investment Company, LLC (EPIQ); and (v) Southeastern Extrusion & Tool, Inc.

## II. JURISDICTION AND VENUE

8. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b) and (e). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F), (H), (O), and (K).

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Sections 506 and 544 of the Bankruptcy Code.

10. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

11. This adversary proceeding is initiated under Bankruptcy Rule 7001(2) and (8) for avoidance and recovery, determination of secured status, bifurcation, and related relief pursuant to sections 502, 506, 544 and 547 of the Bankruptcy Code.

12. Pursuant to a stipulation between the Debtor and the Committee dated November 8, 2021, the Debtor has granted the Committee standing to assert the claims in this adversary proceeding against the Defendant.

13. The Committee consents to the entry of a final order by this Court in the event that, absent such consent, this Court does not possess the authority to enter a final order pursuant to Article III of the Constitution.

## III. BACKGROUND

### The Debtor's Business and Bankruptcy

14. According to the Debtor's first day filings, the Debtor is an industry leader in the fabrication, processing, and extruding of aluminum metals for use in, *inter alia*, the swimming pool, trucking, trailer, and outdoor storage industries (the "Business"). See First Day Declaration of Jordan Meyers in Support of First Day Motions. (Bkr. D.I. #17).

127809680.2

15. The Debtor owns and operates a single location at 9000 River Road, Delair, New Jersey, consisting of approximately 500,000 square feet of industrial space, including a cast house, foundry, and processing area (the "Real Property"). Id.

16. The Debtor also owns machinery, fixtures, and equipment, including a valuable cast house and foundry furnace, several presses, and processing equipment. Id.

17. On June 18, 2021, the Debtor engaged Cowen and Company, LLC ("Cowen") as investment banker to explore a sale of the Debtor's Business or Assets (as defined below).

18. The Committee understands that based on market feedback, the Debtor, in consultation with its advisors, determined that continued operation of Debtor's business was not viable or achievable under the current financial circumstances, and the Debtor decided to sell the Debtor's business or assets (the "Assets").

19. On August 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the District of New Jersey, Camden Vicinage (the "Bankruptcy Court" or the "Court").

20. The Debtor continues to operate its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

21. No request has been made for the appointment of a trustee or examiner.

22. The Debtor has employed professionals to market and sell the Assets pursuant to a motion to sell, which sale will establish the fair market value of the Assets and the allocation of that value between specific Assets.

23. The Debtor's Assets will be sold pursuant to the outcome of an auction conducted on or about November 10, 2021

24. As of the Petition Date, the Debtor had outstanding secured debt obligations in the

4

aggregate principal amount of no less than $9,270,525.89 (the "Prepetition Secured Debt") to its pre-petition secured lender, Tiger Finance, LLC ("Tiger"), pursuant to that Certain Credit Agreement between Tiger and the Debtor dated June 5, 2019 (as subsequently amended[1]), and term notes issued thereunder. The Prepetition Secured Debt was secured by a first priority lien on all of the Debtor's Assets.

25. On September 29, 2021, the Court entered a Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004 and 9014 (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Granting Liens and Superpriority Claims, (III) Authorizing Use of Cash Collateral, and (IV) Modifying the Automatic Stay (the "Final DIP Order"). (Bkr. D.I. #116). Pursuant to the Final DIP Order, the Debtor was authorized to borrow up to $15,500,000 in debtor-in-possession financing (the "DIP Facility") from Tiger, including a roll-up of the Prepetition Secured Debt, pursuant to the term of a Senior Secured Super-Priority Debtor-in-Possession Credit Agreement between Tiger and the Debtor, dated August 15, 2021. As security for the DIP Facility, the Final DIP Order provided Tiger with superpriority claims secured by priming, first priority liens on all of the Debtor's Assets that are "senior and superior in priority to all other secured and unsecured creditors of the Debtor's estate." Final DIP Order at ¶ 6.

26. The instant proceeding is intended to *inter alia* avoid transfers to Euler, determine the secured status of Euler's claims, bifurcate claims, and determine the allowance of Euler's claims, if any.[2]

---

[1] The Credit Agreement was most recently amended by a Seventh Forbearance Agreement and Seventh Amendment to Credit Agreement, dated July 27, 2021.

[2] The Debtor and the Committee have filed other adversary proceeding complaints contemporaneously herewith seeking to avoid certain other liens on similar grounds as set forth herein.

5

127809680.2

**The Creditor's Claims**

27. Upon information and belief, Euler is an insurance company authorized to issue policies of insurance in New Jersey.

28. Euler was the underwriter for its insured, Northeast Metal Traders, Inc. ("Northeast Metal").

29. Northeast Metal provides customized collection services for scrap recycling needs.

30. The Debtor contracted with Northeast Metal to collect scrap pieces of aluminum.

31. The Debtor, however, did not pay Northeast Metal for its services.

32. In October of 2019, Northeast Metal sustained a loss under its insurance policy with Euler, and Euler paid for the loss.

33. Because of Euler's payment, Euler has become subrogated to the rights and causes of action of its insured, Northeast Metal.

34. On October 28, 2020, Euler initiated a collections action in the Superior Court of New Jersey, Civil Part, Camden County Docket Number CAM-L-003551-20 for all sums alleged to be due owing on the underlying debt (the "Pre-Petition Action").

35. On May 3, 2021, a judgment was entered in the Pre-Petition Action in favor of Euler and against the Debtor in the amount of $184,195.37 (the "Judgment").

36. The Judgment was entered on the civil judgment and order docket on May 28, 2021.

37. Pursuant to New Jersey law, upon entry the Judgment automatically became a lien against all real property in the State of New Jersey currently owned or thereafter acquired by the Debtor (the "Lien" and together with the Judgment, the "Claim").

38. Upon information and belief, Euler failed to take any steps to execute upon or otherwise perfect the Judgment and the Lien. A true and correct copy of the docket for the Pre-

127809680.2

Petition Action is attached as **Exhibit "A"** hereto.

39. On August 19, 2021, Euler filed a proof of claim against the Debtor's Bankruptcy estate (the "POC"). See POC #5.

40. The POC asserts an unsecured claim for $172,876.78, and the attached documentation shows this claim is for exactly the same principal amounts and for the same charges to Northeast Metal adjudicated by the Judgment.

## FIRST COUNT

## AVOIDANCE OF THE LIEN UNDER 11 U.S.C. § 544

41. The Committee incorporates by reference the foregoing paragraphs as if set forth fully herein and at length.

42. Pursuant to section 544(a) of the Bankruptcy Code, the Debtor, as debtor-in-possession, stands in the shoes of a hypothetical creditor who obtains an execution against the Debtor that is returned unsatisfied on the Petition Date.

43. As noted above, the Debtor has granted the Committee standing to bring the claims asserted in this adversary proceeding.

44. Under New Jersey law, a creditor holding an unexecuted levy occupies a lower priority on real property than a creditor who has already executed upon its lien, even if such execution remains unsatisfied.

45. Although real property is subject to execution and levy, neither execution nor levy are automatic upon the entry of a judgment, and require additional affirmative acts for any lien to become perfected. N.J.S.A. § 2A:17-17.

46. A writ of execution is not binding until it is delivered to the sheriff of the appropriate county. See N.J.S.A. § 2A:17-10.

127809680.2

47. Euler has not taken any steps to execute upon or otherwise perfect the Judgment and the Lien. See **Exhibit "A"** attached hereto.

48. Euler has failed to execute and levy upon the Judgment and Lien.

49. As a result of Euler's failure to both execute upon the Judgment and the Lien, and levy upon the Debtor's Assets, the Lien is lesser in priority to creditors with superior priority interest in the Debtor's Assets, including creditors that have executed against the Real Property as of the Petition Date, even if unsatisfied.

50. Pursuant to sections 544(a)(1), (2) and (3) of the Bankruptcy Code, the Debtor is vested with the power of an unsatisfied judgment holder that has executed upon the Judgment and the Lien and levied upon the Assets, including the Real Property; and therefore, may avoid the Lien against the Debtor's Assets.

51. The Lien is an unperfected secured claim, and therefore, is avoidable.

**WHEREFORE**, the Committee respectfully requests this Court enter judgment in its favor and against Euler, avoiding the Lien against the Debtor's Assets pursuant to section 544(a) of the Bankruptcy Code and providing such other and further relief as the Court deems just and equitable.

## SECOND COUNT

## AVOIDANCE OF THE LIEN UNDER 11 U.S.C. § 547

52. The Committee incorporates by reference the foregoing paragraphs as if set forth fully herein and at length.

53. The Judgment was entered on the civil judgment and order docket on May 28, 2021, seventy-nine (79) days prior to the Petition Date.

127809680.2

54. The Lien arising from the Judgment did not attach until the Judgment was entered on the civil judgment and order docket.

55. The attachment of the Lien is a transfer that was made on account of an antecedent debt.

56. The Debtor was insolvent at the time of the levy, as it was not paying its debts as they came due and is presumed to have been insolvent on and during the 90 days immediately preceding the Petition Date pursuant to section 547(f) of the Bankruptcy Code.

57. The Lien enabled Euler to obtain more than it would have (i) in a hypothetical chapter 7 liquidation on the Petition Date; (ii) had the levy not been made; and (iii) if it received payment as otherwise provided under the Bankruptcy Code.

58. Based on the Debtor's reasonable due diligence, taking into account Euler's known or reasonably knowable affirmative defenses under section 547(c) of the Bankruptcy Code, the Lien is avoidable as a preference under Section 547(b) of the Bankruptcy Code.

**WHEREFORE**, the Committee respectfully requests this Court enter judgment in its favor and against Euler, avoiding the Lien pursuant to section 547(b) of the Bankruptcy Code and providing such other and further relief as the Court deems just and equitable.

### THIRD COUNT

### DISALLOWANCE OF PROOF OF CLAIM UNDER 11 U.S.C. § 502(d)

59. The Committee incorporates by reference the foregoing paragraphs as if set forth fully herein and at length.

60. The Court "shall disallow any claim of any entity… that is a transferee of a transfer avoidable under [section 544 or 547 of Bankruptcy Code]…" 11 U.S.C § 502(d).

61. Euler filed the POC in the Debtor's chapter 11 case based upon the Claim.

127809680.2

62. Euler is the recipient of an avoidable transfer: the Judgment and the Lien are avoidable pursuant to section 544(a) and/or section 547(b) of the Bankruptcy Code.

63. The POC must be disallowed under section 502(d), as Euler has not returned the avoidable transfer.

**WHEREFORE**, the Committee respectfully requests that the Court enter a judgment in its favor and against Euler, disallowing the POC pursuant to section 502(d) of the Bankruptcy Code and providing such other and further relief as the Court deems just and equitable.

## FOURTH COUNT

### DETERMINATION OF SECURED CLAIM AND BIFURCATION OF CLAIM UNDER 11 U.S.C. § 506(a)(1)

64. The Committee incorporates by reference the foregoing paragraphs as if set forth fully herein and at length.

65. Pursuant to section 506(a) of the Bankruptcy Code, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C § 506(a)(1).

66. The Claim and Lien are subordinate to the superpriority claims and first priority liens in the Debtor's Assets held by Tiger.

10

67. To the extent the POC or any amendment thereto alleges a secured claim by virtue of the Judgment, that Claim is unsecured.

68. To the extent that the Claim is an allowed secured claim, the Claim must be bifurcated into a secured claim in the amount of the value of that Debtor's Assets subject to the Lien after accounting for the value of Tiger's first priority liens and any other superior liens in the Debtor's Assets, and an unsecured claim for the remainder.

**WHEREFORE**, the Committee respectfully requests that the Court enter a judgment in its favor and against Euler, bifurcating the Claim into secured and unsecured portions pursuant to section 506(a) of the Bankruptcy Code, and providing such other and further relief as the Court deems and equitable.

### FIFTH COUNT

### LIEN STRIP OF UNSECURED CLAIM UNDER 11 U.S.C. § 506(d)

69. The Committee incorporates by reference the foregoing paragraphs as if set forth fully herein and at length.

70. Pursuant to section 506(d)(1) of the Bankruptcy Code, "to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." 11 U.S.C § 506(d)(1).

71. To the extent the Claim is unsecured or not an allowed claim, this Court must enter a judgment voiding the Lien.

**WHEREFORE**, the Committee respectfully requests that the Court enter a judgment in its favor and against Euler, voiding the Lien to the extent the Lien exceeds the value of the allowed secured claim and providing such other and further relief as the Court deems just and equitable.

11

127809680.2

Dated: November 9, 2021

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

**FOX ROTHSCHILD LLP**
*/s/ Joseph DiPasquale*
Joseph J. DiPasquale
Michael J. Viscount, Jr.
Martha B. Chovanes
Michael R. Herz

*Counsel to the Official Committee of Unsecured Creditors*

12

127809680.2